JUSTICE KOONTZ,
with whom CHIEF JUSTICE CARRICO joins, dissenting.
I respectfully dissent. This is not a complicated case, and the law applicable to its resolution, as recited by the majority, is well established and requires no repetition here. The essence of the required analysis is a determination of the parties’ intent with regard to the ownership of their respective property as expressed in the language of their agreement. In my view, the parties’ intent to hold their property separately and, thus, to have the corresponding right to dispose of it however and whenever they chose is sufficiently clear from the language of their agreement. The majority, however, limits the rights determined and fixed by this agreement to those of the parties while they were both living.
We know from the terms of the agreement that on January 25, 2000, Debra W. Blankenship (now Debra B. Pysell) and David Anthony Pysell executed what they styled as an “Ante Nuptial Agreement” in anticipation of their marriage on that same day. This *462 agreement satisfied the statutory requirements for a valid “premarital agreement” pursuant to Code §§ 20-148 and 149 and, undoubtedly, was intended as such.
With regard to the content of a premarital agreement, Code § 20-150 provides that:
Parties to a premarital agreement may contract with respect to:
1. The rights and obligations of each of the parties in any of the property of either or both of them whenever and wherever acquired or located;
2. The right to buy, sell, use, transfer, exchange, abandon, lease, consume, expend, assign, create a security interest in, mortgage, encumber, dispose of, or otherwise manage and control property;
3. The disposition of property upon separation, marital dissolution, death, or the occurrence or nonoccurrence of any other event;
4. Spousal support;
5. The making of a will, trust, or other arrangement to carry out the provisions of the agreement;
6. The ownership rights in and disposition of the death benefit from a life insurance policy;
7. The choice of law governing the construction of the agreement; and
8. Any other matter, including their personal rights and obligations, not in violation of public policy or a statute imposing a criminal penalty.
Admittedly, the premarital agreement at issue does not expressly include every provision permitted by Code § 20-150. Although the agreement consists of one type-written page and makes no reference at all to this statute, it was not executed in a vacuum and is not to be similarly interpreted. Draftsmanship is not the issue; the parties’ intent is the issue. Code § 20-150 is broad in scope and permits prospective spouses to contract with regard to their property rights during their joint lives as well as at the death of one of them. It is in this context that the question in this case becomes whether the language of the parties’ agreement sufficiently reflects their intent that their *463 agreement include property comprising the estate of the deceased spouse.
There is no dispute that the parties intended to hold their existing property as “separate property” and to similarly hold subsequently acquired property in the same manner. Paragraphs (2) and (3) of their premarital agreement express that intent clearly and explicitly. This agreement became effective upon the parties’ marriage, Code § 20-148, and, thus, it necessarily follows that the parties intended by the language of these paragraphs to hold their property as “separate property” rather than as “marital property” following that marriage. See Code § 20-107.3 (defining separate and marital property and limiting equitable distribution awards to marital property upon decree of dissolution of marriage).
One of the primary purposes of a premarital agreement is to establish such a distinction in the ownership of property of married couples so that one spouse may hold property free from any rights of the other spouse during the marriage or upon a dissolution of the marriage. Such provisions are permitted by Code § 20-150. Moreover, “separate property” and “premarital agreements” have come to have commonly understood connotations among prospective spouses such that they are commonly understood to convey the notion that, upon marriage, the wife will have her property, the husband will have his property, and each may dispose of that property as if no marriage had occurred. While certainly of no legal efficacy, that notion is not without merit in determining the intent of parties to a premarital agreement such as the present one, which is significantly lacking in specificity.
In this regard, the parties’ agreement was executed without express reference to the death of either spouse as specifically addressed in Code § 20-150(3) and raised by implication in Code § 20-150(5) which addresses a will. However, in paragraph (6), the parties did provide that it was their intent “that their respective rights to each other’s property acquired by operation of law shall be solely determined and fixed by this agreement.” This paragraph must have some purpose other than, and in addition to, the purpose of the other paragraphs in the parties’ agreement. But the majority lumps paragraphs (2) and (3) together with paragraph (6) and concludes that these paragraphs refer to property owned by the parties during their joint lives, and not to property comprising die estate of the deceased spouse. I disagree. The majority has focused entirely on the draftsmanship of the document rather than the intent of the parties.
*464 As I understand the majority’s opinion, paragraph (6) of the parties’ agreement is read as having no real purpose or meaning. The agreement expressly addressed the parties’ intent with regard to their property rights arising from the marital relationship during their joint lives in paragraphs (2) and (3). Excluding those rights, the remaining rights that could be “acquired by operation of law” are those that accrue to a surviving spouse. In the present case, there is no dispute that the asserted claims by Mrs. Pysell against Mr. Pysell’s estate pursuant to (1) Code §§ 64.1-13 and -16 (elective share of deceased spouse’s estate), (2) Code § 64.1-151.1 (family allowance for surviving spouse), and (3) Code § 64.1-151.2 (exempt property for benefit of surviving spouse) are acquired by operation of law. In my view, paragraph (6) of the parties’ agreement clearly reflects the parties’ intent that Mrs. Pysell’s right to assert these claims are to be solely determined and fixed by the agreement. In that agreement, the parties by the language in paragraph (2) and (3) expressed their intent that each spouse’s property would be owned as separate property. There is simply no language in the parties’ agreement to suggest that the parties intended that, upon the death of one spouse, the surviving spouse could subject the property comprising the estate of the deceased spouse to claims acquired by operation of the previously mentioned statutes. When fairly considered, paragraph (6) sufficiently expresses a contrary intent of the parties.
For these reasons, I would affirm the judgment of the trial court entering summary judgment for the executor of Mr. Pysell’s estate.